IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TANK CONNECTION, LLC

                *Plaintiff*,

v.

JOHN R. HAIGHT,

                *Defendant*,

USA TANK SALES & ERECTION COMPANY,
INC.,

                *Relief Defendant*.

Case No.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Tank Connection, LLC ("Tank Connection"), states:

**The Parties**

1.  Tank Connection is a Kansas limited liability company whose principal office is located in Labette County, Kansas. Tank Connection is and has for many years been in the business of designing, manufacturing, installing, and servicing above ground tanks for the storage of dry and liquid products.

2.  John R. Haight is a former employee of Tank Connection.  Haight was employed by Tank Connection from July 28, 2008, until his unexpected voluntary resignation at 8: 30 a.m. on September 12, 2013, so that he could become employed by USA Tank Sales & Erection Company, Inc.  Haight's position with Tank Connection at the time of his resignation was International Sales Manager. Haight resides in Neosho County, Kansas.

3.  USA Tank Sales & Erection Company, Inc. ("USA Tank"), is Haight's current employer. USA Tank competes directly with Tank Connection in the design, manufacture,

sale, and installation of above ground steel storage tanks for both dry and liquid products. Tank Connection is informed and believes that Haight began his employment with USA Tank on September 13, 2013, the day following his resignation from Tank Connection. Since April 8, 2008, USA Tank has registered with the Kansas Secretary of State to conduct business in Kansas as a foreign for-profit corporation.  USA Tank is a Missouri corporation with its principal office located at 5897 Hwy 59, Goodman, Missouri.

4.  USA Tank is named a relief defendant in this action based on Tank Connection's information and belief that USA Tank is in possession of certain tangible and intangible personal and intellectual property of Tank Connection by virtue of the misconduct of Haight.

### Jurisdiction

5.  This court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action against John R. Haight ("Haight") arises under the private right of action provision of 18 U.S.C. § 1030(g), the Computer Fraud and Abuse Act.

6.  This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Tank Connection's state law claims because they are so related to claims in the action within the court's original jurisdiction that those claims form part of the same case or controversy.

### Venue

7.  Venue is proper both because Haight and USA Tank reside in the District of Kansas within the meaning of 28 U.S.C. § 1391(b)(1) and a substantial part of the events or omissions giving rise to Tank Connection's claims occurred in the District of Kansas within the meaning of 28 U.S.C. § 1391(b)(2).

## Haight's Obligation to Protect Confidential Information

8.  Tank Connection and its most senior employees have decades of experience in the design, manufacturer, installation, and servicing of above ground tanks. During that same time, it has established relationships with customers, vendors, and referral sources and with the key contacts within those organizations.

9.  Tank Connection has also developed unique design processes, pricing methods and supporting software, costing, customer lists and contacts, marketing strategies, business strategies, and other unique methods of doing business.

10.  Haight, on the other hand, had no prior experience in the storage tank business. All that he learned and the relationships he developed were the result of his employment with Tank Connection.

11.  When Haight began his employment with Tank Connection, he knew that he would be privy to confidential information belonging to Tank Connection.  That confidential information included such things as pricing, costs, customer lists, engineering and design plans, lists of pending jobs known as "hot lists," and corporate strategies, as noted above. Haight promised that he would keep this information confidential and not disclose it to third parties, such as USA Tank, without prior written permission from Tank Connection. Haight confirmed his promise in writing by signing a Non-Disclosure Agreement dated July 28, 2008. Exhibit 1.  The agreement was signed in Labette County, Kansas.  Haight has never received written permission to disclose confidential information to third parties.

12.  The Employee Handbook for Tank Connection also requires employees to protect from disclosure confidential company information and to return all company property upon termination.

13.  Haight had six portable computer flash or "thumb" drives that are used for the storage of electronic of data that he used in connection with his job. Some of those drives belong to Tank Connection.

### Haight's Resignation from Tank Connection

14.  Haight announced his resignation on Friday, September 12. As part of the termination process, he met with Dennis Banning, CFO, and Misty Chalker, Human Resources Manager.  Haight replied, "Yes," when asked if all company property in his possession had been returned.

### Attempt by Tank Connection to Avoid Litigation

15.  It was discovered after Haight left the company's premises that he routinely carried with him six or more computer flash drives. It was confirmed that these drives, or some of them, included confidential design and pricing programs belonging to Tank Connection.

16.  Both Banning and Chalker called for Haight the next day, September 13, to inquire about the flash drives.  They left messages stating that they knew he was in possession of flash drives that contained company information. Their calls were not returned that day.

17.  Haight returned Banning's call the following day, September 14. Haight told Banning that he had discovered in his briefcase three flash drives belonging to Tank Connection. Banning reminded Haight that Tank Connection intended to protect its proprietary and confidential information.  Haight responded that he was "well aware" of what information was proprietary and confidential information and he did not have any of that information in his possession.

18.  Haight returned the three flash drives he admitted having. None contained any information of consequence. However, none of the drives had been used since 2012.

**The First Forensic Examination of Haight's Company Computer Hard Drive**

19.  Haight was assigned a laptop computer to be used in the performance of his work for Tank Connection. Haight routinely took that laptop computer home with him at the end of the work day. That computer was taken from Haights' office and secured the morning he terminated his employment with Tank Connection.

20.  A preliminary forensic examination of the hard disk drive in Haight's laptop computer was performed on September 13. The hard drive was forensically imaged and the image was  examined. The examination uncovered a directory named "Business Plans, Budgets, Etc." in the recycle bin of Haight's computer.

21.  The examination also uncovered a folder with that same name on a portable flash drive designated with the letter F: which had been inserted in a Universal Serial Bus port on Haight's laptop computer and information copied to that flash drive. A computer file named "2013 TC International Business Plan.docx" had also been copied to that portable flash drive. That file was not found on any of the three flash drives Haight returned to the company.

22.  Both that specific folder and specific file exist as part of the company's highly confidential electronically stored information.

23.  The flash drive with this confidential information was not returned by Haight to Tank Connection.

24.  On September 13, 2013, a letter from counsel for Tank Connection was sent to Haight. Exhibit 2.  Haight returned one more thumb drive. The contents of that drive were

inconsequential and did not contain the confidential folder.

**The Second Forensic Examination of Haight's Company Computer Hard Drive**

25.  A second forensic examination of the imaged hard drive showed that on September 10 and 11, 2013, the two days before Haight resigned, he remotely accessed the company computer server and searched, among others, the confidential files of two company officers: Vince Horton, the Vice-President of Sales, and Jeanette Horton, the Office Manager.

26.  This inspection revealed that highly sensitive pricing, design, personnel, costing, "hot lists" (pending jobs), and other confidential information had been viewed during that time by Haight.  It also appears that Haight copied images of files displayed on the monitor. This copying process is known most commonly as a "screen shot." This is more cumber-some than simply copying the file from which the image is produced, but it leaves a very limited digital trail.

27.  The forensic examination also showed a number of "zero byte" files. These files are empty of everything except metadata, such as the date the file was created.  There is compelling forensic evidence that Haight took "screen shots" of confidential information, allowing him to have the images and data actually displayed on the computer screen , and then "zeroed" them on the server in an attempt to make them untraceable.

28.  No one but Haight had accessed these files on the dates in question.

**The Third Forensic Examination of Haight's Company Computer Hard Drive**

29.  Tank Connection hired BKD, LLP, to perform a more detailed forensic examination. The process employed a LNK File Report Timeline detailing file activity from September 9 through 11.  This report detailed the files that were accessed from the hard

drive, network share, or removable devices.  The examination determined that two flash drives were attached to USB ports on Haight's laptop computer at different times when Haight was accessing the company's main computer server: late evening on September 9 and late evening on September 11. Those two flash drives have not been accounted for. Based on the results of the forensic examinations, Tank Connection believes that highly sensitive and confidential information was accessed by Haight, and that Haight employed those flash drives to copy that information, including critical items such as "hot lists", design programs, bonus plans, and other confidential information that would have great value and use to a competitor of Tank Connection.

### Haight's Employment with USA Tank

30.  Haight left the employment of Tank Connection to work for USA Tank for substantially the same job for higher compensation.

31.  The confidential information targeted and misappropriated by Haight from Tank Connection would afford him a significant, unfair, and illegal advantage in his position with USA Tank.

32.  Haight would have no reason to take confidential information from Tank unless he planned to use it in his employment with USA Tank.

### The Status of USA Tank as a Relief Defendant

33.  While it is all but certain that Haight is using the misappropriated information at his new job with USA Tank, it is not known whether USA Tank is aware of its use.

34.  It is nonetheless very likely that the misappropriated information has been incorporated into the USA Tank computer system or otherwise is in the possession of USA Tank for use by Haight.

35.  USA Tank has no interest in the outcome of this case.

36.  USA Tank thereby is appropriately designated a relief defendant because it has in its possession confidential information misappropriated by Haight and is necessary to afford proper relief to Tank Connection.

**The Damage That Will Result from Disclosure of this Information**

37.  Tank Connection and its key personnel have decades of experience in all aspects of the above ground tank industry. During that time, confidential methods, programs, techniques, and strategies have been developed that distinguish it in the market and from its competition.  USA is one of many such competitors.

38.  The above ground storage tank business is very competitive. The type of information misappropriated by Haight gives him, and thus USA Tank, a significant and unfair competitive advantage:

a.      The design programs, which were developed solely by Tank Connection, disclose unique design methods, techniques, and information. A competitor would be handed everything needed to duplicate the work done by Tank Connection.

b.      Bonus programs list the salaries and the bonus potential of every sales person in this organization, each and every sales person.  This information is extremely sensitive.   A competitor could "cherry pick" key Tank Connection employees by offering compensation and bonuses at Tank Connection.

c.      Pricing lists allow Haight to determine how Tank Connection would price a specific job. Knowing that, Haight could bid just enough under Tank Connection to secure the job.

     d.      "Hot lists" of pending work identifies customers with contracts. This is a customer list with detailed information unique to the customer. It is the type of list and information that are protectable interests under Kansas law. This information would allow Haight to target these customers, find out the project, and take jobs away by underbidding or other means. This information is critically important. Most of the revenue of Tank Connection is generated from the customers on these lists.

     e.      Corporate Strategy Meeting Notes.  These files are listed by year and they have the sales projections and strategy. That information is very sensitive, including income projections for the coming year, actual income numbers through three quarters of the current year , and projections for the fourth quarter of the current year.  It also includes a list of  top clients of Tank Connection by revenue.

     f.      The "Business Plan" and "Budgets" identified are also protectable interests under Kansas law. Knowing a competitor's plans for marketing, research and development, compensation, commission structures, costs, and other confidential information is anti-competitive, and creates an unfair and illegal advantage.

39.  Part of the resulting damage to Tank Connection is and will be lost profits and other money damages; but far worse is the irreparable damage resulting from the irretrievable loss and disclosure of confidential information, damage to its goodwill and reputation, in the hands of unscrupulous ex-employees and competitors.

40.  Tank Connection will continue to suffer losses due to the dissipation of its confidential information, loss of customers, and loss of goodwill and reputation, unless Haight and USA Tank are enjoined from use and possession of that information.

**Count I - Breach of Contract against Haight**

41.  The Non-Disclosure Agreement and the Tank Connection Employee Handbook, both of which were agreed to by Haight in exchange for his employment, are clear in their prohibition of the disclosure of confidential information.

42.  Haight violated those agreements in the following ways:

      a.      Illegally accessing the company computer server and searching the private files of individual management employees containing confidential and highly sensitive information belonging to Tank Connection.

      b.      Illegally copying and misappropriating that information.

      c.      Illegally disclosing and using that information in his subsequent employment with USA Tank in competition with Tank Connection.

43.  The resulting damage to Tank Connection will be lost profits and other money damages, lost customers, lost good will and reputation, and dissipation of its confidential information.

44.  Tank Connection is entitled to preliminary and permanent injunctive relief against further breaches by Haight. Tank Connection has further suffered damages as a direct result of Haight's actions which include lost profits and attorney fees.

**Count II - Violation of the Kansas Uniform Trade Secrets Act by Haight**

45.  All of the confidential information of Tank Connection described in this action are trade secrets because it is "... information, including a formula, pattern, compilation, program, device, method, technique, or process, that derives independent economic value,

actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." K.S.A. §60-3320(4).

46.  Haight knew that when he copied the information from the company server, he was taking information that was confidential and that he had a duty not to use or disclose that information.

47.  Haight nonetheless took the information and is likely using it as an employee of USA Tank to illegally and unfairly compete with Tank Connection by soliciting customers, underbidding Tank Connection, and interfering with customer relationships .

48.  Haight is currently using this information to identify and recruit Tank Connection employees.

49.  The actions of Haight were and continue to be willful and malicious, and Tank Connection is entitled to an award of twice its damages as exemplary damages under K.S.A. 60-3322(2).

### Count III - Breach of Duty of Loyalty by Haight

50.  Kansas employees have a common law duty of loyalty and good faith to their employers. Those duties require them to act only for the benefit of their employer in all matters within the scope of their employment and to avoid conflicts between their duty to the employer and their own self-interest.

51.  Tank Connection had the right to control the conduct of Haight with respect to matters entrusted to him. As an agent of Tank Connection, Haight had a duty of loyalty with

respect to matters within the scope of his agency.

52.  Haight violated his duty to Tank Connection:

a.       Haight breached his duty of good faith and failed to act in the best interests of Tank Connection;

b.       Haight put  himself in a position antagonistic to Tank Connection.

c.       Haight used his position of trust to acquire confidential information belonging to Tank Connection while in that position for his own use and profit.

d.       Haight failed to disclose material facts and made misrepresentations.

e.       Haight misappropriated and used confidential, proprietary, and trade secret information of Tank Connection for his own benefit.

53.  Tank Connection seeks compensatory damages, lost profits, punitive damages, attorneys' fees, and injunctive relief as a result of Haight's breach of his duty.

54.   Tank Connection has been damaged in an amount yet unknown because Haight breached his duty of loyalty. The damages of Tank Connection will be ascertained through discovery in this case.

**Count IV - Violation of Computer Fraud and Abuse Act - 18 U.S.C. §1030 - by Haight**

55.  The Computer Fraud and Abuse Act (CFAA) authorizes civil actions for "compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. §1030(g).

56.  The computer server used by Tank Connection was a "protected computer" as defined by the CFAA.

57.  Haight violated the CFAA by intentionally accessing the Tank Connection server and exceeding his authorized access when he accessed, viewed, and copied information

from confidential files.

58.   Haight acted with intent to defraud Tank Connection. He was planning to resign the next day and to use the information for his own benefit and for the benefit of USA Tank, his new employer.

59.   Tank Connection has suffered damages in excess of $5,000 responding to Haight's actions, conducting a forensic examination of its computer files, and restoring the information to its condition prior to the Haight's action.

### Count IV - Temporary Restraining Order and Injunctive Relief

60.   Tank Connection will suffer irreparable injury unless a temporary restraining order issues. Tank Connection has no adequate remedy at law.

61.   The threatened injury to Tank Connection outweighs whatever damage the proposed injunction may cause Haight and USA Tank.

62.   The restraining order and injunction will not be adverse to the public interest but rather will support Kansas economic development by returning valuable property to its rightful owner, a Kansas limited liability company.

63.   A substantial likelihood exists that Tank Connection will prevail on the merits.

### Relief Sought

64.   Tank Connection requests the following relief:

a.      A temporary restraining order requiring the following:

i.      Representatives of Tank Connection be allowed immediately to inspect and copy the computers, phones, e-mail accounts, of Haight and his agents including, but not limited to, electronically stored data, flash drives

and other recording media,  wherever they may be situated and whether they are in the possession of Haight or others, and to copy any and all information, either on or off the premises where they may be situated.

ii.      Haight and Relief Defendant USA Tank shall prepare, sign, and file with the Court, within 10 days of the date of this Order, a complete and accurate accounting for the period of September 10, 2013, to the date of this Order. Such accounting shall include, without limitation, the identification of:

(1)      All information belonging to or taken from Tank Connection.

(2)      The name,  customers or employees of Tank Connection who have been contacted in any manner for any reason.

(3)      All e-mails, letters, and other documents provided to those identified in sub-paragraph (2).

(4)      All sales, bids, offers, contracts, correspondence, marketing contacts, other information exchanged with those identified in sub-paragraph (2).

iii.      Haight and USA Tank must return within 72 hours, all Tank Connection property to Tank Connection, including all originals and copies of tangible and electronically stored information, proprietary documents and information, trade secrets, confidential information, vendor lists, material lists and information, customer information, employee information, business development information, request for proposal, request for bid, marketing

- 14 -

data, prospect meeting data, proposals, faxes, financial information, pricing, contracts, marketing brochures, marketing database, marketing plans, costs, customer lists, customer information, internal weaknesses, prospect lists, client lists, employee lists, alliance relationships, competitive bid information, client contact lists, sales leads, prospective employee lists, business plans, profit, margin, and forecasting information, strategic planning, project costs, and any other Tank Connection information and data kept in any form or media.

iv.     Haight and USA Tank be directed to immediately and continuously preserve all electronically stored information until further order of the court.

v.      Haight must be ordered to discontinue work for USA Tank at least until completion of the preliminary injunction hearing.

vi.     USA Tank be required to forensically image the hard drives on all company computers used by Haight, the sales and engineering departments, and from the company servers, within 72 hours of the service of the TRO and that the images be delivered to counsel for Tank Connection or their designee.

b.      That a preliminary injunction should issue to the same effect.

c.      A permanent injunction be issued to the same effect as the preliminary injunction requested above and, in addition, barring Haight from further employment in the storage tank industry for at least three years.

d.      Compensatory damages against Haight in an amount to be proven at

trial.

e.      Punitive damages in an amount sufficient to deter Haight from

engaging in intentional misconduct at issue here.

f.      Taxable costs and reasonable attorney fees pursuant to the Kansas

Uniform Trade Secrets Act.

g.      Prejudgment interest at the legal rate on all liquidated sums; accrued

interest at the legal rate on all damages; and such other relief in law or equity as this

Court deems just.

### DEMAND FOR JURY TRIAL

Tank Connection hereby demands a trial by jury on all issues so triable.

### REQUEST FOR LOCATION OF TRIAL

Plaintiff requests that Wichita, Kansas, be the location for the trial of this case.

/s/ Ross A. Hollander
Ross A. Hollander (9010)
Stephen M. Joseph (7452)
Joseph, Hollander & Craft LLC
500 N. Market Street
Wichita, KS 6714
Phone: (316) 262-9393
Fax:     (316) 262-9006
*rhollander@josephhollander.com*
*sjoseph@josephhollander.com*

*Attorneys for Plaintiff, Tank Connection, LLC*



# NON-DISCLOSURE AGREEMENT

TANK Connection and employee agree that certain proprietary information will be or has been exchanged as a result of daily work transactions.

Recognizing the necessity of maintaining the strictest confidence with respect to the material to be disclosed, including, but not limited to, records, processes, assembly methods, pricing, costs, customer lists, documentation, all engineering documents, corporate strategy, and objectives, and in consideration of the review by the undersigned of such disclosures, I, the undersigned do hereby agree and bind myself as follows:

1.  That I personally shall observe the strictest secrecy with respect to all proprietary information that I have been exposed to.

2.  That I personally will not disclose to third parties the materials mentioned above unless prior written consent is given by TANK Connection.


EMPLOYEE NAME (print):    *John R. Haight*

EMPLOYEE SIGNATURE:    *John R. Haight*

DATE:  *7·28·08*


EXHIBIT 1

# JosephHollander&Craft
### *Lawyers and Counselors*   LLC

Reply To:
500 N. Market St.
Wichita, KS 67214-3514
Tel: (316) 262-9393
Fax: (316) 262-9006

Stephen M. Joseph
Ross A. Hollander
Julia A. Craft
Michelle Moe Witte
Edward L. Robinson
Boyd R. McPherson
Rebecca F. Sisk
Holly M. Perkins

Christopher M. Joseph
Bach T. Hang
Casey Y. Meek
Jess W. Hoeme
Carrie E. Parker
M. Kristine Savage
Nicholas J. Means

Topeka Office:
1508 SW Topeka Blvd.
Topeka, KS 66612-1887
Tel: (785) 234-3272

Lawrence Office:
123 West 8th St., Suite 204
Lawrence, KS 66044-2687
Tel: (785) 856-0143

September 13, 2013

John R. Haight
14970 210th Road
Erie, Kansas 66733

      Re:    Tank Connection Confidential Information

Dear Mr. Haight:

      I write on behalf of Tank Connection.

      Your recent decision to work for a competitor of Tank Connection carries with it certain responsibilities. The enclosed documents outline your promises and post-termination responsibilities to Tank Connection. The Non-Disclosure Agreement outlines your promise not to disclose to third-parties, which obviously includes your new employer, any of the information identified by Tank Connection in that Agreement. The Employee Handbook, which you agreed to follow, contains a similar provision at p. 12. Finally, the handbook at p. 31 requires the return of all property of Tank Connection. Tank Connection believes and expects that you will honor these commitments.

      Your job as International Sales Manager gave you access to unique and confidential information. Part of that information was loaded on USB Flash Drives, or "thumb drives," which were given to you as aids in performing your job. This letter is to make certain that those drives have been or soon will be returned and that the contents of those drives have not been copied.

      Please contact Dennis Banning at Tank Connection upon receipt of this letter regarding the thumb drives and the information on them.

      Very Truly Yours,

Ross A. Hollander

EXHIBIT 2

cc:   USA Tank
      5897 Hwy 59
      Goodman, MO 64843

      Tank Connection

EXHIBIT 2



# NON-DISCLOSURE AGREEMENT

TANK Connection and employee agree that certain proprietary information will be or has been exchanged as a result of daily work transactions.

Recognizing the necessity of maintaining the strictest confidence with respect to the material to be disclosed, including, but not limited to, records, processes, assembly methods, pricing, costs, customer lists, documentation, all engineering documents, corporate strategy, and objectives, and in consideration of the review by the undersigned of such disclosures, I, the undersigned do hereby agree and bind myself as follows:

1.  That I personally shall observe the strictest secrecy with respect to all proprietary information that I have been exposed to.

2.  That I personally will not disclose to third parties the materials mentioned above unless prior written consent is given by TANK Connection.

EMPLOYEE NAME (print): ___John R. Haight___

EMPLOYEE SIGNATURE: ___John R. Haight___

DATE: ___7·28·08___

EXHIBIT 2

## Rehires

In the event Tank Connection Affiliate Group decides to rehire a former employee, the following schedule will be used to determine any applicable benefits.  Eligible employee classification(s):

**Regular full-time employees (32 hours)** hours are only applicable in the following calculations:

♦ Must have been employed at least 90 days.
♦ If separation lasts for one year or less, the original or adjusted hire date will be adjusted by the number of days of separation to the nearest whole day.
♦ If separation lasts longer than one year, no previous service is granted.
♦ The adjusted hire date will be used for benefit calculations.
♦ The adjusted hire date will not be used for layoffs, promotions or shift consideration.  In these situations the actual return to work date will be applied.


Employment with Tank Connection Affiliate Group is at-will, and either party may terminate that relationship at any time, with or without cause, and with or without advance notice.

## Non-Disclosure

The protection of confidential business information and trade secrets is vital to the interests and success of Tank Connection Affiliate Group.  Such confidential information includes, but is not limited to, the following examples:
♦ Compensation data of other employees
♦ Computer programs and codes
♦ Customer lists
♦ Financial information
♦ Labor relations strategies
♦ New materials research
♦ Pending projects and proposals
♦ Proprietary production processes
♦ Research and development strategies
♦ Scientific data
♦ Scientific prototypes
♦ Technological data
♦ Technological prototypes

All employees are required to sign a Non-Disclosure Agreement as a condition of employment.  Anyone who improperly uses or discloses trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment, even if they do not actually benefit from the disclosed information.

EXHIBIT 2

## Return of Property

Employees are responsible for all Tank Connection Affiliate Group property, materials, or written information issued to them or in their possession or control, for which they may be required to sign an authorization in the case of termination.

All Tank Connection Affiliate Group property must be returned by employees on or before their last day of work.  Where permitted by applicable laws, Tank Connection Affiliate Group may withhold, from the employee's check or final paycheck, the cost of any items not returned when required.  Tank Connection Affiliate Group may also take all action deemed appropriate to recover or protect its property.

EXHIBIT 2